CHET A. KRONENBERG (SBN: 222335)
ckronenberg@stblaw.com
ERICA SEDLER (SBN: 272250)
erica.sedler@stblaw.com
BENJAMIN A. MALINGS (SBN: 346831)
benjamin.malings@stblaw.com
SIMPSON THACHER & BARTLETT LLP
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502

BRYCE L. FRIEDMAN (*pro hac vice*)
bfriedman@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendant*
*The Standard Fire Insurance Company*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LAYTON, an individual; SHERWOOD VANE and JANEE VANE husband and wife; and JOSHUA WEISMAN and ELIZABETH MARKS, husband wife,<br><br>Plaintiffs,<br><br>vs.<br><br>THE STANDARD FIRE INSURANCE COMPANY and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:25-cv-07216 GW (JCx)<br><br>**THE STANDARD FIRE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:         December 1, 2025<br>Time:         8:30 a.m.<br>Courtroom:  9D<br><br>Judge: Hon. George H. Wu<br><br>[Filed concurrently herewith: Declaration of Peter Michalik; Request for Judicial Notice] |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on December 1, 2025 at 8:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 9D, located at 350 West 1st Street, Los Angeles, California 90012, Defendant The Standard Fire Insurance Company ("Standard Fire") will, and hereby does, move to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to sever the claims of Plaintiffs Sherwood Vane, Janee Vane, Joshua Weisman and Elizabeth Marks (collectively, "Plaintiffs") from this action pursuant to Federal Rule of Civil Procedure 21.

Standard Fire moves to dismiss Plaintiffs' First Amended Complaint against it in its entirety because Plaintiffs fail to allege facts sufficient to state a claim upon which relief can be granted. Standard Fire seeks the alternative remedy of severance due to misjoinder of Plaintiffs. This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Peter Michalik, the Request for Judicial Notice, the complete files and records in this action, and any additional material and arguments as may be presented in connection with the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 30, 2025.

Dated: October 8, 2025

SIMPSON THACHER & BARTLETT LLP

By:*/s/ Chet A. Kronenberg*
　　CHET A. KRONENBERG

1999 Avenue of the Stars, 29th floor
Los Angeles, California 90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502
ckronenberg@stblaw.com

*Attorney for The Standard Fire Insurance Company*

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.......................................................................................4

    I.    The Renewals...................................................................................4

    II.    The First Amended Complaint ........................................................8

LEGAL STANDARD ..................................................................................................9

ARGUMENT...............................................................................................................10

    I.    THE FAC SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ....................................10

        A.    Plaintiffs' UCL Cause of Action Fails to State a Claim (Count 1)...................................................................10

            1.    Plaintiffs Do Not Identify Any Misrepresentation, Much Less One That Would Mislead A Reasonable Consumer .........................12

            2.    Plaintiffs Do Not Allege Sufficient Factual Matter From Which It Might Reasonably Be Inferred That Standard Fire Knew Its Replacement Cost Estimates Were False Or Misleading..............................................................15

            3.    Plaintiffs Seek an Impermissible UCL Remedy....16

        B.    Plaintiffs' Negligence Cause of Action Fails to State a Claim (Count 2).........................................................16

        C.    Plaintiffs' Breach of Contract Cause of Action Fails to State a Claim (Count 4)........................................18

        D.    Plaintiffs' Bad Faith Claim Fails to State a Claim (Count 3)...............................................................................19

    II.    IN THE ALTERNATIVE, THE COURT SHOULD SEVER THE CLAIMS OF THE MISJOINED VANE AND WEISMAN/MARKS PLAINTIFFS.........................................22

CONCLUSION.............................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamo v. Fire Ins. Exch.*,
219 Cal. App. 4th 1286 (4th Dist. 2013) ............................................................. 16

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 10

*Bargetto v. Walgreen Co.*,
2024 U.S. Dist. LEXIS 129446 (N.D. Cal. June 14, 2024) ................................ 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 10

*Boschma v. Home Loan Ctr., Inc.*,
198 Cal. App. 4th 230 (4th Dist. 2011) ............................................................... 11

*Camping Unlimited for the Developmentally Disabled v. Brown & Brown of Garden City, Inc.*,
2022 U.S. Dist. LEXIS 23666 (N.D. Cal. Feb. 9, 2022) .................................... 17

*Castellon v. U.S. Bancorp.*,
220 Cal. App. 4th 994 (2d Dist. 2013) ................................................................ 16

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ............................................................................... 11

*Everett v. State Farm Gen. Ins. Co.*,
162 Cal. App. 4th 649 (4th Dist. 2008) .................................................... 12, 17, 21

*Fitzpatrick v. Hayes*,
57 Cal. App. 4th 916 (2d Dist. 1997) .................................................................. 18

*Gasnik v. State Farm Ins. Co.*,
825 F. Supp. 245 (E.D. Cal. 1992) ...................................................................... 19

*Gibson v. Gov't Employees Ins. Co.*,
162 Cal. App. 3d 441 (5th Dist. 1984) ................................................................ 19

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ............................................................................. 10

*Golden State Concessions LLC v. Wells Fargo Bank, NA*,
2021 U.S. Dist. LEXIS 213643 (N.D. Cal. Mar. 10, 2021) ............................... 18

*Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*,
220 F. Supp. 3d 1008 (N.D. Cal. 2016) ........................................................ 17, 18

- iii -

*Hennessy v. Infinity Ins. Co.*,
  358 F. Supp. 3d 1074 (C.D. Cal. 2019)..................................................................12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..................................................................11, 14

*Kirkpatrick v. Home Depot U.S.A., Inc.*,
  2025 U.S. Dist. LEXIS 138986 (E.D. Cal. July 19, 2025)................................15

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005).......................................................................4

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1156 (N.D. Cal. 2011).........................................................15

*Lipeles v. Ciccone*,
  2025 U.S. Dist. LEXIS 129197 (C.D. Cal. May 20, 2025)..............................19

*Major v. W. Home Ins. Co.*,
  169 Cal. App. 4th 1197 (4th Dist. 2009).......................................................21

*MetroPCS v. SD Phone Trader*,
  187 F. Supp. 3d 1147 (S.D. Cal. 2016) .........................................................10

*Milan v. JPMorgan Chase Bank, N.A.*,
  2025 U.S. Dist. LEXIS 88299 (C.D. Cal. May 7, 2025)................................11

*Minich v. Allstate Ins. Co.*,
  193 Cal. App. 4th 477 (4th Dist. 2011) .......................................................20, 21

*Moore v. Kayport Package Express*,
  885 F.2d 531 (9th Cir. 1989).......................................................................10

*O'Keefe v. Allstate Indem. Co.*,
  953 F. Supp. 2d 1111 (S.D. Cal. 2013) .........................................................19

*Ozeran v. Jacobs*,
  798 Fed. Appx. 120 (9th Cir. 2020) .............................................................11

*Punian v. Gillette Co.*,
  2015 U.S. Dist. LEXIS 111208 (N.D. Cal. Aug. 20, 2015)............................15

*Safetypark Corp. v. Julie A. Su*,
  2025 U.S. Dist. LEXIS 78548 (C.D. Cal. Apr. 24, 2025)................................22

*Saitsky v. DirecTV, Inc.*,
  2009 U.S. Dist. LEXIS 134817 (C.D. Cal. Sep. 22, 2009)............................16

*Sheahan v. State Farm Gen. Ins. Co.*,
  394 F. Supp. 3d 997 (N.D. Cal. 2019)..............................................2, 13, 16, 20

*Sheahan v. State Farm Gen. Ins. Co.*,
  442 F. Supp. 3d 1178 (N.D. Cal. 2020)..................................................*passim*

- iv -

TABLE OF AUTHORITIES
No. 2:25-cv-07216 GW (JCx)

*United States ex rel. Silingo v. Wellpoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ............................................................................... 15

*Sprewell v. Golden State Warriors*,
    2001 U.S. App. LEXIS 20434 (9th Cir. Dec. 28, 2001) ...................................... 4

*Sunvilla Corp. v. Weiss*,
    2025 U.S. Dist. LEXIS 162984 (C.D. Cal. Aug. 21, 2025) ................................. 9

*Turner v. Fed. Ins. Co.*,
    2021 U.S. Dist. LEXIS 205499 (C.D. Cal. Aug. 18, 2021) ............................... 20

*Vepo Design Corp. v. Am. Econ. Ins. Co.*,
    2020 U.S. Dist. LEXIS 246792 (C.D. Cal. Oct. 16, 2020) ............................... 16

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................... 10, 16

Cal. Ins. Code § 2051(a)(2) ............................................................................. 21

Cal. Ins. Code § 2051(b) .................................................................................. 21

Cal. Ins. Code § 2051.5(a)(2) .......................................................................... 21

Cal. Ins. Code §10102 ....................................................................................... 5

Cal. Ins. Code § 10102(a) ............................................................................... 14

**Other Authorities**

Cal. Practice Guide: Insurance Litigation (the Rutter Group 2025
    Update), Ch. 6B-G ........................................................................................ 21

Fed. R. Civ. Proc. 8(a)(2) ................................................................................ 10

Fed. R. Civ. Proc. 9(b) ............................................................................... 10, 11

Fed. R. Civ. Proc. 12(b)(6) ............................................................................ 1, 9

Fed. R. Civ. Proc. 20(a)(1) ............................................................................. 22

Fed. R. Civ. Proc. 21 ..................................................................................... 1, 22

TABLE OF AUTHORITIES
No. 2:25-CV-07216 GW (JCx)

Defendant The Standard Fire Insurance Company ("Standard Fire")[1] respectfully submits this Memorandum of Points and Authorities in support of its motion to dismiss Plaintiffs' First Amended Complaint (the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to sever the claims of Plaintiffs Sherwood Vane, Janee Vane, Joshua Weisman and Elizabeth Marks from this action pursuant to Federal Rule of Civil Procedure 21.[2]

## PRELIMINARY STATEMENT

Plaintiffs Joseph Layton, Sherwood and Janee Vane, Elizabeth Marks, and Joshua Weisman (collectively, "Plaintiffs") owned three separate homes that were destroyed by the January 2025 Los Angeles County wildfires. Standard Fire has already paid the full dwelling limits of three separate insurance policies to Plaintiffs and provided them each with temporary housing. Plaintiffs bring this case because they are each underinsured, *i.e.*, they believe their homeowners insurance limits are inadequate to fully cover the cost of rebuilding. Plaintiffs blame their underinsurance on Standard Fire and seek insurance coverage above the clearly delineated policy limits.

Plaintiffs' theory of the case is without merit. California law dictates that insurers must warn homeowners who, like Plaintiffs, purchased "replacement cost coverage," that such coverage "only pays for replacement costs ***up to the limits specified in [their] policy***," and that any "estimate" of the replacement cost prior to issuance of the policy is "not a guarantee" of sufficient insurance to rebuild in the event of a loss. Among other things, Standard Fire repeatedly warned Plaintiffs that, to "avoid being underinsured" in the event of a total loss, they should consider whether additional coverage was necessary. Moreover, the state-

---

[1] The FAC refers to The Standard Fire Insurance Company by the trade name Travelers.

[2] This is Standard Fire's second motion to dismiss. Plaintiffs mooted Standard Fire's first motion to dismiss the original complaint (ECF No. 16) by filing the FAC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC
NO. 2:25-cv-07216 GW (JCx)

mandated disclosures provided by Standard Fire directly to Plaintiffs made clear that Plaintiffs were purchasing replacement cost coverage "up to the limits specified in [their policies]" and ***not*** "guaranteed replacement cost coverage" that covers repairs and replacements "regardless of the dwelling limits shown on the policy declarations page."  Plaintiffs are asking the Court to rewrite the dwelling limits of their homeowners policies (which have been paid) to make them unlimited, a policy that Plaintiffs did not purchase.

The FAC mirrors a previously dismissed federal lawsuit stemming from the October 2017 Northern California wildfires.  *See Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997 (N.D. Cal. 2019) (*"Sheahan I"*); *Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178 (N.D. Cal. 2020) ("*Sheahan II*"). Just as Plaintiffs do here, the *Sheahan* plaintiffs blamed their insurer for alleged underinsurance of their properties because the insurer provided a pre-policy purchase "estimate" of replacement costs of the subject property.  The *Sheahan* court dismissed the plaintiffs' claims at the pleading stage with prejudice, holding that insurers have no legal duty to guarantee sufficient levels of coverage and that the disclaimers regarding the risks of underinsurance (as present in Plaintiffs' policies here) "would render any reliance on the alleged misrepresentations by State Farm unreasonable."

As in *Sheahan*, each of Plaintiffs' causes of action fails to state a claim:

UCL Violation (Count 1): Plaintiffs' Unfair Competition Law (the "UCL") claim fails to allege any fraudulent, unlawful or unfair act.  Plaintiffs do not identify a single misrepresentation or allege facts sufficient to show that a reasonable consumer would be misled by Standard Fire's alleged representations. Notably, the FAC omits the fact that Plaintiffs' policy renewal packages contained explicit warnings that Standard Fire's pre-policy "estimate" of replacement costs is "not a guarantee" of sufficient coverage and advised them to consider greater

- 2 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC
NO. 2:25-CV-07216 GW (JCx)

limits to avoid underinsurance. In addition, the renewal packages also warned Plaintiffs that, to "avoid being underinsured," they should consider, among other things, whether additional coverage was necessary to provide full protection in the event of a loss. Plaintiffs also fail to make sufficient factual allegations from which it might reasonably be inferred that Standard Fire knew that its replacement cost estimates were false or misleading. Finally, Plaintiffs' requested relief in the form of payment of money beyond their policy limits is a claim for monetary damages which is unavailable under the UCL.

<u>Negligence (Count 2)</u>: It is black-letter law that insurers do not have a legal duty to ensure that a homeowners policy covers the full amount of a loss to property. Plaintiffs allege that Standard Fire nonetheless assumed this duty by providing a pre-policy replacement cost estimate. But Standard Fire did not assume a duty to Plaintiffs by stating that an "estimate" of replacement costs is "not a guarantee" of sufficient coverage and that, to "avoid being underinsured," Plaintiffs should consider whether additional coverage is necessary to provide full protection in the event of a loss.

<u>Breach Of Contract (Count 4)</u>: Plaintiffs do not identify any contractual provisions by which Standard Fire guaranteed payment of full replacement costs in excess of the policy limits. In fact, the policy renewal packages state the exact opposite. Standard Fire's enforcement of the policy limits does not constitute breach of a contract.

<u>Bad Faith (Count 3)</u>: Plaintiffs do not allege that Standard Fire denied—let alone unreasonably—any benefits owed under Plaintiffs' respective policies as required to state a bad faith claim. Instead, Plaintiffs seek to force Standard Fire to pay *more* than their policy limits, which cannot be the basis of a bad faith claim as a matter of law. In addition, although Plaintiffs complain that Standard Fire has delayed payment of "Additional Replacement Cost Protection" coverage ("ARCP") limits until after Plaintiffs rebuild or replace their properties,

- 3 -

Plaintiffs' insurance policies explicitly state that ARCP coverage is not due until after a homeowner has repaired or replaced the damaged dwelling. Plaintiffs seek to circumvent the terms of the policy and obtain coverage they did not purchase.

For the foregoing reason, the FAC should be dismissed with prejudice. Alternatively, the claims of the Vane and Weisman/Marks Plaintiffs should be severed due to misjoinder.

## FACTUAL BACKGROUND

### I. The Renewals

Plaintiffs purchased three separate insurance policies from Standard Fire for homeowners coverage. FAC ¶ 3. Plaintiffs allege that they obtained their policies upon purchase of their homes and subsequently renewed their policies annually through the time of their losses due to wildfire in January 2025. *Id*. ¶¶ 39, 45, 51. The policy renewal packages (each a "Renewal" and, collectively, the "Renewals") are substantially identical. The FAC references and extensively quotes the Renewals (*see* FAC ¶¶ 40, 46, 52), and they are attached as Exhibits A to C to the Declaration of Peter Michalik ("Michalik Decl.").[3]

The policies provide dwelling coverage on a "replacement cost" basis—that is, Standard Fire contracted to reimburse Plaintiffs for potential dwelling losses "up to the limits specified in [Plaintiffs'] polic[ies]." Michalik Decl. Exs. A at p. 29; B at p. 82; C at p. 139.[4] At the end of each policy period, Standard Fire offered renewed dwelling coverage—also referred to as "Coverage A". The Renewals stated that "[t]he limit of liability for [Coverage A] is based on

---

[3] On a motion to dismiss, the Court may consider documents quoted and referenced in a complaint. *See Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005). The Court may disregard allegations that are contradicted by the incorporated documents. *Sprewell v. Golden State Warriors*, 2001 U.S. App. LEXIS 20434, at *13-15 (9th Cir. Dec. 28, 2001).

[4] Plaintiffs' dwelling policies also contained coverage for "other structures" (such as detached garages or sheds), personal property, and loss of use. Michalik Decl. Exs. A at p. 15; B at p. 66; C at p. 125.

an *estimate* of the cost to rebuild [their] home, including *an approximate cost* for labor and materials in [their] area, and specific information that [they] have provided about [their] home." FAC ¶¶ 40, 46, 52 (emphasis added).

Standard Fire warned Plaintiffs that, to "avoid being underinsured," they should consider, among other things, whether additional coverage was necessary to provide full protection in the event of a loss. *See* Michalik Decl. Exs. A at p. 30; B at p. 83; C at p. 140. Standard Fire also advised Plaintiffs that, "*[w]hile not a guarantee*, a current estimate can help protect you against being underinsured." *See id.* (emphasis added). However, Standard Fire cautioned Plaintiffs that "[a]fter a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor." *Id*. Standard Fire "encouraged [Plaintiffs] to obtain a current estimate of the cost to rebuild [their] home" through "an independent appraisal." *Id*.

Standard Fire warned each Plaintiff that their policies only pay for replacement costs up to the limits specified in Plaintiffs' policies and that the "estimate" of the replacement cost is "not a guarantee" of sufficient insurance. Michalik Decl. Exs. A at p. 30; B at p. 83; C at p. 140; Ins. Code §10102. Standard Fire's disclosures also advised Plaintiffs that they were purchasing replacement cost coverage "*up to the limits specified in [their policies]*" as opposed to "guaranteed replacement cost coverage" that would cover the "full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits":

> **You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**
>
> ================================================

- 5 -

**[ ] ACTUAL CASH VALUE COVERAGE** for either a total or partial loss to the structure or its contents pays the amount it would cost you to repair, rebuild, or replace the thing lost or injured, less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less . . .

**[X] REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation.  Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling.  *Coverage only pays for replacement costs up to the limits specified in your policy*.

**[X] EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation.  Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling.  Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

**[ ] GUARANTEED REPLACEMENT COST COVERAGE** *covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page*.

- 6 -

. . . .

═══════════════════════════════════════════

**READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY**: The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses.  The actual policy and endorsements provide details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. . . . It is important to take the time to consider whether the limits and limitations of your policy meet your needs.  Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

*Id*.  Exs. A at p. 29; B at p. 82; C at p. 139 (partial emphasis added).

Therefore, Standard Fire told Plaintiffs that before accepting the renewal offer by paying their premium, they were responsible to ensure the accuracy of their replacement cost estimates, and informed them that: (i) their "coverage amount may need to be adjusted, higher or lower, based on [their] home's specific construction details, updates or upgrades" because "home improvements" and related changes "can significantly increase the replacement cost value of [their] home," and (ii) "[i]t is important to make sure [the] policy affords appropriate coverage and limits to reflect [the] home's replacement cost value in the event of a total loss."  Michalik Decl. Exs. A at pp. 22, 54; B at pp. 73, 109; C at p. 132.  Standard Fire also notified Plaintiffs of their duty to "inform [their] agent or [Standard Fire] representative of any home improvements," because "even small home improvements may affect the cost to rebuild [their] house." *Id.* Exs. A at p. 18; B at p. 69; C at p. 128.

## II.      The First Amended Complaint

Plaintiffs allege receiving estimates of the replacement cost of their homes upon purchasing homeowners insurance from Standard Fire.  FAC ¶ 28.[5] Plaintiffs allege that Standard Fire used a "reconstruction cost estimator program" to generate the estimate.  *Id.* ¶ 29.  Plaintiffs allege in conclusory form that the estimator program was "unreliable" and "systemically severely under-estimate[d] reconstruction costs."  *Id.* ¶ 30.

Each Plaintiff renewed their policy multiple times.  Prior to the 2024-2025 Renewals, Standard Fire provided Plaintiffs with renewal documents informing them of their policy's dwelling limit, which was identical to the limit in the policy for the preceding policy period or slightly higher.  *Id.* ¶¶ 39, 45, 51. According to Plaintiffs, Standard Fire represented that the limit of liability was based on an "estimate of the cost to rebuild [their] homes[.]"  *Id.*  ¶¶ 40, 46, 52. Each Plaintiff alleges that they purchased dwelling coverage and Additional Replacement Cost Protection ("ARCP") coverage equaling 50% of the dwelling limit, which they believed protected them from any "underinsurance gap."  *Id.* ¶¶ 42, 48, 54.[6]  In the FAC, Plaintiffs omit the specific warnings Standard Fire provided to them about this alleged "estimate."  These warnings include that they should consider whether additional coverage was necessary to provide full protection in the event of a loss and that they were purchasing replacement cost coverage "up to the limits specified in [their policies]" as opposed to "guaranteed replacement cost coverage" that would cover the "full cost to repair or replace the

---

[5] The Weisman/Marks Plaintiffs, Plaintiff Layton, and the Vane Plaintiffs allege that they first acquired homeowners insurance from Standard Fire in 2015, 2018 and 2021, respectively.  *See id.* ¶¶ 38, 44, 50.

[6] Plaintiffs' recitation of the coverage limits in their Policies omits Plaintiffs' purchase of additional coverages and benefits like relocation expenses.  *See* Michalik Decl. Exs. A at p. 15; B at p. 66; C at p. 125.  However, for purposes of this Motion, Standard Fire assumes as true Plaintiffs' allegations regarding the application of their limits to their estimated rebuild costs.

damaged or destroyed dwelling for a covered peril regardless of the dwelling limits." *See supra* at 5-7.

According to Plaintiffs, the policies in place at the time of Plaintiffs' loss are: (i) a renewal policy issued to Plaintiff Layton for the period December 14, 2024 to December 14, 2025; (ii) a renewal policy issued to the Vane Plaintiffs for the period March 4, 2024 to March 4, 2025; and (iii) a renewal policy issued to the Weisman/Marks Plaintiffs for the period April 13, 2024 to April 13, 2025. *Id.* ¶¶ 39, 45, 51. Copies of these policies are annexed as Exhibits D to F to the Michalik Decl.

Each Plaintiff alleges that following the loss of their home, Standard Fire estimated that rebuild costs would exceed the dwelling limit of their policies. FAC ¶¶ 41, 47, 53. In addition, Plaintiffs allege that Standard Fire has "delay[ed] the payment of the ARCP" until after Plaintiffs rebuild or replace their properties (which is exactly what the policy language requires). FAC ¶¶ 42, 48, 54; Michalik Decl. Exs. D at p. 224; E at p. 329; F at p. 438 (stating that ARCP Coverage "will apply after a loss, ***provided*** you repair or replace the damaged dwelling") (emphasis added). The FAC asserts the following four causes of action against Standard Fire: (i) violation of California's Unfair Competition Law; (ii) negligence; (iii) breach of contract; and (iv) breach of implied covenant of good faith and fair dealing. *Id*. ¶¶ 56-98.

## **LEGAL STANDARD**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. *Sunvilla Corp. v. Weiss*, 2025 U.S. Dist. LEXIS 162984, at *5 (C.D. Cal. Aug. 21, 2025). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of

- 9 -

fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).

Federal Rule of Civil Procedure 8(a)(2) requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal quotations omitted). In other words, a plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

Moreover, when a plaintiff alleges a fraudulent business practice, as Plaintiffs purport to do here, the plaintiff must satisfy Rule 9(b)'s heightened pleading requirements. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016).

## ARGUMENT

### I.  THE FAC SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM

#### A.  Plaintiffs' UCL Cause of Action Fails to State a Claim (Count 1)

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Where a plaintiff alleges a "course of fraudulent conduct" as the basis for a UCL claim, "the pleading . . . as a whole must satisfy the particularity requirement

of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, 1127 (9th Cir. 2009); *see also Sheahan II*, 442 F. Supp. 3d at 1192 (applying Rule 9(b) to UCL claim stemming from alleged misuse of a cost estimation program). To state a UCL claim based on the fraudulent prong stemming from an alleged misrepresentation, a plaintiff must explain "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (internal quotations omitted). In addition, a plaintiff must allege that the defendant "knew its statements were misleading at the time they were made." *Bargetto v. Walgreen Co.*, 2024 U.S. Dist. LEXIS 129446, at \*23 (N.D. Cal. June 14, 2024). Finally, a statement is "fraudulent" under the UCL only if it is "one that is ***likely*** to deceive members of the public." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 252 (4th Dist. 2011) (internal quotations omitted).

Where an "unfair" practice claim is predicated on the same allegations as a fraudulent business practice claim under the UCL, as here (*see* FAC ¶ 63), the "unfair" claim "cannot survive" if the "fraudulent" claim fails. *See Milan v. JPMorgan Chase Bank, N.A.*, 2025 U.S. Dist. LEXIS 88299, \*15 (C.D. Cal. May 7, 2025) (finding that "unfair" claims that "overlap entirely" with "fraudulent" claims "cannot survive" if the fraudulent practices claim fails).

"The only remedies available to a private plaintiff under California's UCL are the equitable remedies of injunction and restitution." *Ozeran v. Jacobs*, 798 Fed. Appx. 120, 122 (9th Cir. 2020) (citing Cal. Bus. & Prof. Code § 17203).

Plaintiffs' UCL cause of action fails because (i) Plaintiffs have not alleged a misrepresentation that would mislead a reasonable consumer; (ii) Plaintiffs have not alleged that Standard Fire knew its replacement cost estimates were false or misleading; and (iii) Plaintiffs seek an impermissible UCL remedy.

- 11 -

### 1. Plaintiffs Do Not Identify Any Misrepresentation, Much Less One That Would Mislead A Reasonable Consumer

Plaintiffs fail to allege a fraudulent or unfair business practice because an insurer's pre-policy "replacement cost estimate" is just that—"merely an estimate." *Everett v. State Farm Gen. Ins. Co.*, 162 Cal. App. 4th 649, 653, 660-61 (4th Dist. 2008) (rejecting argument that State Farm was responsible for maintaining insured's policy limits equal to the cost to replace the property). Here, Plaintiffs themselves concede that Standard Fire merely "generat[ed] reconstruction cost estimates for each policy." FAC ¶ 6.

In addition, Plaintiffs do not allege what was false or misleading about Standard Fire's replacement cost estimates when they were made. Plaintiffs allege that Standard Fire uses "fewer actual data inputs" and relies on "false inputs" (FAC ¶ 11) and employs "backward-looking data" rather than "forward-looking data (*id.* ¶ 37), but these allegations are nothing more than non-specific conclusory labels with no factual support. Plaintiffs do not allege with particularity a single representation made by Standard Fire regarding the quantity or type of "data inputs" in calculating rebuild estimates and do not explain what "data inputs" were misused or omitted, how Standard Fire would have known of such defects in data, or how the estimates would otherwise have differed. *See*, *e.g.*, *Hennessy v. Infinity Ins. Co.*, 358 F. Supp. 3d 1074, 1081-82 (C.D. Cal. 2019) (dismissing UCL claim where Plaintiff merely "relie[d] upon his own preconceptions regarding what an insurance policy should cover."); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 566 (N.D. Cal. 2019) (dismissing UCL claim because plaintiffs did not "describe the details" of product testing or explain how testing would have alerted Apple to alleged issues).

Moreover, it cannot be overstated that the Renewals contain numerous and repeated warnings—which the FAC omits to mention—that "render any reliance on [any] alleged misrepresentation by [Standard Fire] unreasonable." *See Sheahan II*, 442 F. Supp. 3d at 1190. Indeed, in dismissing the UCL claims

stemming from State Farm's alleged misuse of a replacement cost estimation program following wildfires in Northern California, the *Sheahan* court found that "[e]ven if [p]laintiffs had demonstrated a misrepresentation," "any reliance was not reasonable or justified because of the multiple disclaimers that State Farm gave to plaintiffs." *Id*. at 1187-88.  The disclaimers in *Sheahan* advised plaintiffs that (i) their limits were "based on an estimate of the cost to rebuild [their] home, including an approximate cost for labor and materials in [their] area, and specific information that [they] have provided about [their] home"; (ii) replacement cost estimates may be available from independent sources; and (iii) plaintiffs must take responsibility to "AVOID BEING UNDERINSURED." *Id.* at 1188.  The court held that these disclaimers "would render any reliance on the alleged misrepresentation by State Farm unreasonable." *Id*. at 1190.

These exact state-mandated disclaimers are present in Standard Fire's Renewals and likewise render unreasonable any reliance on any purported misrepresentations regarding policy limits.  For example, Standard Fire informed Plaintiffs that their "REPLACEMENT COST COVERAGE" "only pays for replacement costs up to the limits specified in [their] policy."  Michalik Decl. Exs. A at p. 29; B at p. 82; C at p. 139.  Importantly, Standard Fire simultaneously informed Plaintiffs that their policies did ***not*** provide "**GUARANTEED REPLACEMENT COST COVERAGE**" which "covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits." *Id*.

Standard Fire urged Plaintiffs to "take the time to consider whether the limits and limitations of [their] policy meet [their] needs" and to "AVOID BEING UNDERINSURED" by contacting "[their] agent, broker, or insurance company immediately if [they] believe [their] policy limits may be inadequate." *Id.* Exs. A at pp. 29-30; B at pp. 82-83; C at pp. 139-140.  The Renewals encouraged Plaintiffs to obtain a current estimate from "your insurance agent, broker, or insurance company,

- 13 -

or an independent appraisal from a local contractor, architect, or real estate appraiser," and warned that while such estimates are "not a guarantee," they can help "protect [Plaintiffs] against being underinsured." *Id*.

Finally, Standard Fire advised Plaintiffs that rebuild estimates may not reflect actual costs after a loss due to the potential of a "**DEMAND SURGE**":

> "***After a widespread disaster, the cost of construction can increase dramatically*** as a result of the unusually high demand for contractors, building supplies and construction labor.  This effect is known as demand surge.  Demand surge can increase the cost of rebuilding your home.  ***Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage*** to prepare for this possibility."

*Id*. (quoting Ins. Code § 10102) (partial emphasis added).

Plaintiffs rely on portions of the state-mandated disclaimers in their Renewals which advised homeowners to make sure that the coverage limit on their home was "high enough" to "rebuild [their] home if it is completely destroyed." *See* FAC ¶¶ 6, 29, 30, 61, 81, 96.  Plaintiffs repeatedly mischaracterize this statement as an "assurance" made by Standard Fire within the policies when, in reality, the statement is neither part of the policies nor an "assurance."  Michalik Decl. Exs. A at p. 30; B at p. 83; C at p. 140.  Rather, it is one of many warnings Standard Fire provided to Plaintiffs as mandated by statute to ensure that homeowners know that they are responsible for ensuring that their coverage limits are high enough.  *See* Ins. Code § 10102(a).

Plaintiffs also allege that they believed their ARCP coverage provided protection from any "underinsurance gap."  FAC ¶ 42, 48, 54.  These allegations are not supported by any particularized allegations of any specific statements made by Standard Fire.  *See Kearns*, 567 F.3d at 1124 ("Averments of fraud must be accompanied by 'the who, what, when, where and how' of the misconduct

charged.") (citation omitted).  In addition, there would be no logical reason to purchase ARCP coverage if Plaintiffs truly assumed that their dwelling limits were guaranteed to be sufficient.

In light thereof, Plaintiffs have not and cannot state a UCL claim.

**2.  Plaintiffs Do Not Allege Sufficient Factual Matter From Which It Might Reasonably Be Inferred That Standard Fire Knew Its Replacement Cost Estimates Were False Or Misleading**

An independent basis for dismissal is Plaintiffs' failure to allege sufficient facts from which Standard Fire's knowledge of a fraud might reasonably be inferred.  Although knowledge can be alleged generally, "[t]his does not mean that conclusory allegations regarding a defendant's knowledge will suffice." *Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208, at *33 (N.D. Cal. Aug. 20, 2015).  A complaint must "set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred." *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 679 (9th Cir. 2018).

Here, Plaintiffs allege that Standard Fire "intentionally employed systemic assumptions within the estimator program that [Standard Fire] knew would suppress the resulting reconstruction cost estimates."  FAC ¶ 32.  This is the exact type of vague and conclusory allegation that courts found to be insufficient.  *See Kirkpatrick v. Home Depot U.S.A., Inc.*, 2025 U.S. Dist. LEXIS 138986, at *21 (E.D. Cal. July 19, 2025) (dismissing UCL claim because, as to defendant's knowledge, plaintiff merely alleged that "defendant 'knows, or at least it should know, that its Home Accents C9 bulbs are mislabeled"); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) (dismissing UCL claim because the plaintiff "did not adequately allege that HP knew, or through the exercise of reasonable care should have known, of the printer defect at the time it marketed and advertised the printer's capabilities.").  Absent specific allegations to

support the conclusory statements regarding Standard Fire's knowledge of fraud, this claim must be dismissed.

### 3.    Plaintiffs Seek an Impermissible UCL Remedy

Remedies under the UCL are limited to "restitution and injunctive relief." *Saitsky v. DirecTV, Inc.*, 2009 U.S. Dist. LEXIS 134817, at *5 (C.D. Cal. Sep. 22, 2009) (citation omitted).  Here, Plaintiffs style their request for relief under the UCL as an injunction requiring Standard Fire to adjust their insurance claims without respect to their policy limits.  FAC ¶ 66.  In *Sheahan*, plaintiffs made an identical prayer for relief "that their insurance claims be adjust[ed] . . . without respect to the policy limits set forth in their homeowners insurance policies." *Sheahan I*, 394 F. Supp. 3d at 1006.  The court held that this request amounted to a request for monetary damages, which is not cognizable relief under § 17200.  *Id; see also Vepo Design Corp. v. Am. Econ. Ins. Co.*, 2020 U.S. Dist. LEXIS 246792, *19 (C.D. Cal. Oct. 16, 2020) ("Plaintiffs cannot seek damages under the pretense of an injunction.").  The Court should reject this demand for the same reason.

### B.    Plaintiffs' Negligence Cause of Action Fails to State a Claim (Count 2)

The elements of a negligence cause of action are "the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp.*, 220 Cal. App. 4th 994, 998 (2d Dist. 2013) (citation omitted).  Plaintiffs' negligence claim is based on Standard Fire's purported misuse of an estimator program that "render[ed] unreliable and severe under-estimations of the reconstruction cost of Plaintiffs' homes" that Plaintiffs relied upon to their detriment.  FAC ¶ 73.  Plaintiffs' theory is baseless.

***First***, an insurer does not owe a homeowner a duty to "achieve an accurate replacement coverage estimate." *Sheahan II*, 442 F. Supp. 3d at 1190.  Rather, "[i]t is up to the insured to determine whether he or she has sufficient coverage for his or her needs." *Adamo v. Fire Ins. Exch.*, 219 Cal. App. 4th 1286,

- 16 -

1295 (4th Dist. 2013) (quotations omitted); *accord Everett*, 162 Cal. App. 4th at 660-661 (holding that California law squarely "places the burden of determining the higher limit of liability needed on the insured").

***Second***, the FAC does not allege that Standard Fire undertook any special duty to Plaintiffs sufficient to create a duty of care. *See Camping Unlimited for the Developmentally Disabled v. Brown & Brown of Garden City, Inc.*, 2022 U.S. Dist. LEXIS 23666, at *15 n.3 (N.D. Cal. Feb. 9, 2022) ("[I]nsurers cannot be held liable for failing to ensure adequate coverage absent a special duty."). In *Sheahan II*, the court rejected the insureds' argument that insurance companies took on the responsibility to achieve accurate replacement coverage estimates by using prepopulated data to set coverage limits. *Sheahan II*, 442 F. Supp. 3d at 1188-90.

Here, too, Standard Fire's multiple warnings urging Plaintiffs to ensure their coverage was sufficient are the antithesis of undertaking a special duty. *See, e.g.*, Michalik Decl. Ex. A at p. 29 (advising Plaintiffs that they were purchasing replacement cost coverage "up to the limits specified in [their policies]" and ***not*** "guaranteed replacement cost coverage"); p. 30 (to "avoid being underinsured," Plaintiffs should consider whether additional coverage was necessary to provide full protection in the event of a loss); p. 18 ("Review your policy each year to be sure it reflects the cost to rebuild"); p. 22 ("It is important to make sure your policy affords appropriate coverage and limits to reflect your home's replacement cost value in the event of a total loss"); p. 30 ("Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.").

The statement that Standard Fire has "more than 150 years of experience, financial stability, and superior claim service" (*see, e.g.,* FAC ¶ 4) is true and does not create a duty for Standard Fire to convert "replacement cost coverage" that Plaintiffs bought into "guaranteed replacement cost coverage," which they did not. Standard Fire's generalized statements about its long history of stability and customer service does not give rise to a special duty. *See Hartford*

- 17 -

*Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 220 F. Supp. 3d 1008, 1018 (N.D. Cal. 2016) ("[I]solated, generalized statements are not the type of 'holding out' for which California law imposes an elevated duty of care."); *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 929 (2d Dist. 1997) (finding a general brochure insufficient to constitute "holding out" of special expertise).

Accordingly, Plaintiffs' negligence claim must be dismissed.

### C.   Plaintiffs' Breach of Contract Cause of Action Fails to State a Claim (Count 4)

"To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in [verbatim] or according to legal effect." *Golden State Concessions LLC v. Wells Fargo Bank, NA*, 2021 U.S. Dist. LEXIS 213643, at *14 (N.D. Cal. Mar. 10, 2021) (internal quotation omitted). Here, Plaintiffs allege that Standard Fire "breached the policies" by (i) deliberately misusing a "reconstruction cost estimator"; and (ii) failing to pay the actual benefit of the bargain based on the "reasonable use" of the estimator. FAC ¶¶ 91-98. Plaintiffs' breach of contract claim fails.

***First***, although Plaintiffs allege that Standard Fire "breached the policies," Plaintiffs do not cite any actual policy language. In fact, none of the statements that Plaintiffs rely upon in support of this claim are included within the policies. *See* Michalik Decl. Exs. D-F. The statements cited by Plaintiffs, such as the representation that the "limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home" (FAC ¶ 95), are actually found in the Renewals or correspondence predating the Renewals. *See*, *e.g.*, Michalik Decl. Ex. A at p. 23.

***Second***, Plaintiffs point to no statement in the policies or elsewhere where Standard Fire agreed to use a "reconstruction cost estimator" at all, or in any specified way. As a result, Standard Fire cannot be liable for breach of contract for supposedly misusing a "reconstruction cost estimator." Although Plaintiffs now

allege that the estimates provided prior to their purchase of the policies were too low, Standard Fire explicitly warned Plaintiffs that the estimates were "not a guarantee" of sufficient insurance to rebuild and that, to "avoid being underinsured" in the event of a total loss, they should consider whether additional coverage was necessary. *See, e.g.,* Michalik Decl. Ex. A at pp. 29-30.

**Finally**, Standard Fire cannot be liable for breach of contract for not agreeing to increase the Plaintiffs' policy limits after the loss. A refusal to deviate from the terms of the contract does not constitute a breach. *See Lipeles v. Ciccone*, 2025 U.S. Dist. LEXIS 129197, at *10 (C.D. Cal. May 20, 2025) ("[B]reach does not occur when the party refusing to perform fails to perform tasks that he is not obligated to perform under the terms of the contract.").

Because Plaintiffs fail to state a plausible theory under which Standard Fire has breached the terms of their policies, their claim under this theory must be dismissed.

### D. Plaintiffs' Bad Faith Claim Fails to State a Claim (Count 3)

Plaintiffs' bad faith claim appears to be based on two theories. Neither has merit.

**First**, Plaintiffs allege that Standard Fire breached the implied covenant of good faith and fair dealing by not paying more than the limits in the policies. FAC ¶¶ 81-86. However, it is black-letter law that an insurer's duty of good faith does not extend "beyond the terms of the insurance contract in force." *Gibson v. Gov't Employees Ins. Co.*, 162 Cal. App. 3d 441, 448 (5th Dist. 1984). To state a bad faith claim, an insured must allege an unreasonable withholding of benefits under the policy "as written." *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1115 (S.D. Cal. 2013); *see also Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 251 (E.D. Cal. 1992) (dismissing bad faith claim where insurer offered contractual limits).

In *Sheahan*, the court dismissed the bad faith claim against State Farm, finding that the duty of good faith and fair dealing did not extend beyond the terms of plaintiffs' insurance contract; "instead, [p]laintiffs' theory [was] that State Farm failed to pay *more* than [the] policy limits." *Sheahan I*, 394 F. Supp. 3d at 1003 (internal quotations omitted). As in *Sheahan*, Plaintiffs' bad faith claim does not allege that Standard Fire unreasonably withheld any benefits owed under their policies as written. Instead, Plaintiffs complain that Standard Fire has not agreed to pay more than the agreed-upon policy limits. FAC ¶ 84. Because the duty of good faith cannot extend beyond the terms of their contracts, Plaintiffs' bad faith claim fails as a matter of law.

***Second***, Plaintiffs allege that Standard Fire acted in bad faith by "refusing to pay" ARCP coverage until "after" there has been a rebuild or replacement. FAC ¶ 87. Yet, in the very next paragraph in the FAC, Plaintiffs admit that their policies explicitly provide that ARCP is not available until ***after*** rebuilding costs are incurred. *Id.* ¶ 88 (acknowledging that "each of Plaintiffs' policies provided that [Standard Fire] will not advance the ARCP owed to Plaintiffs under their policies until Plaintiffs have rebuild or replaced of their homes"). Indeed, the Policies state that "the provisions of this Additional Replacement Cost Coverage will apply after a loss, provided you repair or replace the damaged dwelling." Michalik Decl. Exs. D at p. 224; E at p. 329; F at p. 438.

In addition, Plaintiffs' breach of contract cause of action is not based on the purported failure to timely pay ARCP coverage. *See* FAC ¶¶ 91-98. Because there is no breach of contract cause of action concerning ARCP coverage, there can be no bad faith claim. *See Turner v. Fed. Ins. Co.*, 2021 U.S. Dist. LEXIS 205499, at *28-29 (C.D. Cal. Aug. 18, 2021) ("[A] bad faith claim necessarily fails where there has been no breach of contract."); *Minich v. Allstate Ins. Co.*, 193 Cal. App. 4th 477, 493 (4th Dist. 2011) ("Because there was no breach of contract, there was no breach of the implied covenant.") (internal quotations and citation omitted).

*Finally*, Plaintiffs are wrong that "Insurance Code section 2051(a)(2)" requires Standard Fire to pay ARCP to each Plaintiff before they have rebuilt or replaced their homes. FAC ¶ 88. Section 2051(a)(2) does not exist under the Insurance Code. To the extent Plaintiffs meant to refer to § 2051.5(a)(2), Plaintiffs are misapplying it. Section 2051.5(a)(2) requires insurers to pay the "actual cash value of the damaged property, as defined in Section 2051, until the damaged property is repaired, rebuilt, or replaced." Ins. Code § 2051.5(a)(2). Section 2051(b), in turn, refers to "actual cash value recovery" as "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured . . . or the policy limit, whichever is less." Ins. Code § 2051(b).

The "policy limit" as used in § 2051(b) is the dwelling limit listed on the declaration page of the Policies. *See* Michalik Decl. Exs. D at p. 160; E at p. 269; F at p. 374. The "policy limit" is not the combination of the dwelling limit and the ARCP. *See id.*, Exs. D at p.162; E at p. 271; F at p. 376 (stating on declarations pages that ARCP was "50% of Coverage A – Dwelling Limit"). A state appellate court has likewise concluded that ARCP is not included in determining the "policy limit" as that term is used in § 2051(b). *See Minich*, 193 Cal. App. 4th at 486-91 (an extended limits endorsement "changes the amount of coverage, it does not change the policy limit"); *see also Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1204 (4th Dist. 2009) ("The declarations page specified that the extended replacement cost was 25 percent over the policy limits, . . . ."); *Everett*, 162 Cal. App. 4th at 653 (same); Cal. Practice Guide: Insurance Litigation (the Rutter Group 2025 Update), Ch. 6B-G at § 6:359.4 ("Extended replacement cost coverage provides indemnity up to a specified percentage (e.g., 10%) or specific dollar amount above the policy limit.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC
NO. 2:25-CV-07216 GW (JCx)

## II.   IN THE ALTERNATIVE, THE COURT SHOULD SEVER THE CLAIMS OF THE MISJOINED VANE AND WEISMAN/MARKS PLAINTIFFS

To the extent that any claims against Standard Fire survive, the Court should sever the claims of the Vane and Weisman/Marks Plaintiffs because they are misjoined.  Rule 20(a)(1) allows plaintiffs to join their claims in one action if the claims arise out of the "same transaction, occurrence, or series of transactions or occurrences."  This action, however, does not arise out the same transaction, occurrence, or series of transactions or occurrences.  Rather, this case concerns three separate properties each with differing property characteristics resulting in unique replacement cost estimates and three separate insurance policies with different dwelling limits and policy periods:

- Plaintiff Layton: Policy from 12/14/24 to 12/14/25 with $913,000 dwelling limit for home acquired in 2018.  *See* FAC ¶¶ 38-39.

- Vane Plaintiffs:  Policy from 3/4/24 to 3/4/25 with $554,000 dwelling limit for home acquired in 2021.  *Id.* ¶¶ 44-45.

- Weisman/Marks Plaintiffs:  Policy from 4/13/24 to 4/13/25 with $593,000 dwelling limit for home acquired in 2015.  *Id.* ¶¶ 50-51.

As a result, the Vane and Weisman/Marks Plaintiffs should be severed from this action.  *See* Fed. R. Civ. Proc. 21 (a court "may at any time, on just terms, . . . drop a party"); *Safetypark Corp. v. Julie A. Su*, 2025 U.S. Dist. LEXIS 78548, at *12 (C.D. Cal. Apr. 24, 2025) (dismissing all claims other than those against the first-named plaintiff due to misjoinder where six plaintiffs filed a complaint concerning alleged delays in federal government processing).

## CONCLUSION

As Plaintiffs previously amended their complaint in response to a motion to dismiss, Standard Fire's instant motion to dismiss Plaintiffs' FAC should be granted with prejudice.

Dated: October 8, 2025

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: */s/ Chet A. Kronenberg*
    CHET A. KRONENBERG

1999 Avenue of the Stars, 29th floor
Los Angeles, California 90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502
ckronenberg@stblaw.com

*Attorney for The Standard Fire Insurance Company*

- 23 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC
No. 2:25-CV-07216 GW (JCx)

## **L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant The Standard Fire Insurance Company, certifies that this brief contains 6,989 words, which complies with the word limit of L.R. 11-6.2.

Dated: October 8, 2025                    SIMPSON THACHER & BARTLETT LLP


By: */s/ Chet A. Kronenberg*
        CHET A. KRONENBERG

*Attorney for The Standard Fire Insurance Company*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC
NO. 2:25-CV-07216 GW (JCx)